Hovember 27.
JUDGE CARR.
This is an action of trespass on the case, founded on the alleged promise of the Defendant to pay the amount of two bonds, which the Defendant and another had executed to one Wessen, and of which the Plaintiff had been induced by the said promise, to take of Wessen a verbal transfer. The Declaration sets out the case in nine counts; the first three, money counts; the others, founded on the special promises and assurances of the Defendant. To all the special counts, there is a special demurrer, assigning ten causes of demurrer. The Court sustained the demurrer as to the 4th and 5th counts, and overruled it as to the others. The Defendant also pleaded six pleas. Rirst Hon Assumpsit, on which issues was joined. Then four special pleas to the special counts; and last, Hul Tie! Record to the 9th count.
*To the second plea, the Plaintiff demurred, and the Court sustained the demurrer. To the third plea, he replied specially, the Defendant demurred, and the Court overruled the demurrer. To the fourth plea, the Plaintiff replied specially. The Defendant rejoined specially. The Plaintiff demurred, and the demurrer was sustained. The issue joined on the plea of Hul Tiel Record was found by the Court for the Plaintiff, to which the Defendant filed exceptions, making the record a part of his bill. The Defendant also filed exceptions to the opinion of the Court, refusing certain instructions asked, and giving others not asked for.
This brief outline fully supports the assertion of Counsel, that there has been much Ink shed in this case, fairly attributable to the rage for special pleading, which seems to have possessed the parties in the Court below; for the merits, as it seems to me, lie within a narrow compass, and might have been presented by short and simple pleadings.
The argument here, was chiefly on the demurrer to the four last counts. These counts, I consider all good, and to be supported by the same reasoning. I will, therefore, confine my examination to one of them; and will take the ninth, as it seems to present most exactly the real case between the parties.
The case made by this count is substantially as follows: that Wessen was indebted to the Plaintiff, and being possessed of two single bills, purporting to have been executed by the Defendant and Thos. Cleaton, senr. his surety, for the sum of $440 each, proposed to transfer them to the Plaintiff, in payment of the sum due him, and a further sum to be paid to the said Wessen by the Plaintiff: that in a conversation between the Plaintiff and the Defendant, concerning the debt due the Plaintiff from Wessen, and concerning the said single bills, the Defendant promised the Plaintiff, that if he would take the single bills from Wessen, he the Defendant would pay him the sums of money specified in the same, when they should *become due: that the Plaintiff, confiding in this promise, did take a transfer (without written assignment) of the said single bills in payment of the money that Wessen owed him, and paid him the excess: that the Plaintiff afterwards brought suits in the name of Wessen (but for his own benefit) on the said single bills, against the Defendant: that the Defendant pleaded to each non ést factum; and issues being joined on the said pleas, such proceedings were had, that in each case a Jury found the issue for the Defendant, and Judgments were rendered by the Court in his favor; as, by the records, &c., more fully appears; and the Plaintiff saith, that the single bills which were the subjects of the said verdicts and Judgments, were the same which the Plaintiff had previously shown to the Defendant, and which he had promised to pay, if the Plaintiff would take a transfer of them, and further, that they had not been in any manner altered from the time of the said promise, till the rendition of the said Judgments, whereby the Defendant became bound and liable to the said Plaintiff to pay, &c., with the usual conclusion. The demurrer admits ail these facts to be true; and the question is, are they sufficient in Law to support the action?
The general rule is, that “any damage, or any suspension or forbearance of his right, or any possibility of a loss, occasioned to the Plaintiff by the promise of another, is a sufficient consideration for such promise, and will make it binding, although no actual benefit accrues to the party undertaking.’’ 3 Burr. 1673 ; 3 Term Rep. 24; 2 H. Black. 312; 1 Sauurl. 211, b.; 2 Saund. 136. There can be no doubt, that the promise here comes within the rule; and indeed, I understood this to be admitted at the bar.
But, it was insisted, that the count was demurrable, because (setting out the records of the Judgments on the bonds) it showed on its face, that the promise to pay them might (if available at all) have availed the party in those actions; and therefore, could not be the foundation of a *separate and distinct action. The examination which I have been able to give this subject, leads me to a different conclusion, both as to the position taken, *623 and the consequence derived from it. I do not think, that in the actions on the bonds, the promise of Cleaton to pay them to Chambliss could have been resorted to; nor if it could, does it seem to me, as at present advised, a necessary conclusion, that therefore the promise would support no separate action. It was contended, that in actions on the bonds, the promise might be resorted to in two ways: 1st, by way of replication to the plea of non est faGtum : 2, by way of evidence to rebut the plea of non est factum, if issue was taken on that plea.
As to the first, a little attention to the form and nature of the plea of non est factum, will show, I think, that no such replication could have been taken to it. Uvery plea, which amounts to a negation of the' existence of the cause of action set out, must conclude to the Country. If it confesses and avoids, it should conclude with a verification. The plea of non est factum, whether general or special, is a denial of the existence of the Deed; and therefore, the uniform conclusion is to the Country. See 2 Chitt. PI. 460-1-2-3-4, where various forms are given, and many ■cases referred to. See also Rastal’s Entries, 179, a. o., 180 a. b., where many forms are given, such as that the writing was delivered as an escrow, &c. and so is not his Deed; or that he is illiterate, and the writing was read to him as if given for ten marks to A., which he believing, sealed and delivered it; and so he says, that the writing now brought into Court, expressing that he is bound to the said A. in twenty marks, is not his Deed; and of this he puts himself upon the Country. This (I repeat) is the uniform conclusion of every plea of non est factum; and so are Cleaton’s pleas to the bonds concluded. Now, wo know, that when a plea concludes to the Country, the Plaintiff can never reply any new matter. He must either accept, by a similiter, the issues tendered, or demur. There could, *then, have been no replication, that Cleaton had promised to pay the bonds to Chambliss.
Could this have been given in evidence on the issue .-joined? That issue was, whether it was the Deed of Cleaton or not. The plea admitted the original execution of the bond, but averred that it had been, since the delivery, materially altered, without the knowledge or consent of the Defendant, and so was not his Deed. It was contended, that it' the alteration had been made with the assent of the Defendant, he would still have been bound by the bond; and that the promise to Chambliss, that if he would get a transfer of the bond, the Defendant would pay it, was proof of such assent, and proper, on that ground, to be •resorted to. To prove that an alteration of the Deed, if assented to by the obligee, would not vitiate it, Shepherd’s Touchstone, 68; 11 Co. 27. Com. Dig. 294; 4 Johns. 54; 18 Johns. 499; and9Cranch, 28, were referred to. I have examined these cases. Some of them say, that the alteration, if made by the obligor, will not annul the bond; others, if made by his consent. But all contemplate a case of consent given prior to, or at the time of, the aiteration made; and it seems to be considered as a re-execution, or re-acknowledgment, of the Deed. In our case, the promise of Cleaton to pay the bonds was made after the alteration, to a third person, and without a knowledge that any change had been made in the bonds. How then could this promise avail to prove, that Cleaton authorised such change, or assented to it; that he re-acknowledged or re-executed the bonds, with a view to make that change a part of them?
But, suppose this the case, and I cannot think it follows, that no separate action can be sustained on the promise. It does not seem to me to be one of that class, relied on at the bar, where the party has his choice of two remedies, and is bound by his election. In those cases, the cause of action is the same, it is one; here it is not so. Cleaton had bound himself to Wes-sen in two bonds. It was these *bonds which Chambliss bought. His natural and proper course was, first, to sue on them; if he recovered, it would be by force of the .sealing and delivery of the bonds; and the promise of Cleaton, which induced him to take them, would be entirely out of view. If Cleaton, by his defence to these bonds, defeated the recovery, then would seem to be the tin e to resort to the promise; for then only, would it be ascertained, that by that promise the Plaintiff had sustained loss. Then Chambliss might well say to Cleaton, “You have induced me to take these bonds by your assurances. They have proved nought, and you must answer it.”
But is not this whole discussion misplaced? How can we, in considering the demurrer to the Declaration, take into view the effect of the Judgment on the bonds, or the evidence which might or might not be admitted on that trial? The mode in which a party must avail himself of a former Judgment for the same cause of action, is by plea in bar, or in an action like this, by way of evidence on the general issue. If pleaded, it operates as an estoppel, unless the Defendant can avoid it by demurrer or replication. Suppose the Judgment on the bonds had been pleaded in bar here. The plea must have averred that the verdict and Judgment were directly upon the same point, and between the same parties, or privies; for, as it is well expressed by Lord Ellenboroug.h in Outram v. Morewood, 3 East, 358, the question on such plea is, ‘ ‘whether an allegation on record, upon which issue has been once taken and found, is, between the parties taking it and their privies, conclusive according to the finding thereof, so as to estop the parties respectively from again litigating that fact, once so tried and found.” Suppose then, that the former Judgment had been thus pleaded, concluding (as it must do) with a verification by the record, and the Plaintiff had replied, that there was no such record. Would the production of the record of the Judgment on the bonds have supported the plea? Would it have shown an issue *taken and found on the same allegation, and between the same parties, or their privies? The parties here are *624 Chambliss v. Cieaton; there, Wessen v. Cieaton, and it seems questionable, whether the privity of estate between Wessen and Chambliss (not appearing upon the record) could have been averred in the plea; such is the strictness in pleading matter in estoppel. See 2 H. Black. 530; Doug. 159; Com. Dig. “Estoppel,” E. 4; Co. Litt. 352, b. But take it, that the privity could have been averred and shown, as it would seem reasonable that it might. Yet the record must also show, that issue was taken and found, on the same allegation, which is the foundation of the second action. Here, the foundation of the action is the promise of Cieaton to Chambliss; there, the foundation is the bond of Cieaton to Wessen. The issue there, was upon non est factum; that was the point decided, the allegation taken and found; an allegation not put in issue, and which could not possibly be put in issue, in the case before us. If then, the Judgment on the bonds had been pleaded, the plea could not have availed; for, if it had stated the record correctly, a demurrer would have lain ; and if incorrectly, the replication of nul tiel record would have overthrown it.
Whether the records of the Judgments on the bonds would have been admissible evidence; on the plea of non assumpsit in this action, need not be discussed; for, if admissible, we must presume that they were before the Jury; and they having found for the Plaintiff we must take that finding to be right. For, we know, that even a Judgment between the same parties, upon the same point, and which, if pleaded, would have been a perfect bar, is, when used as evidence under the general issue, not conclusive upon the Jury, but only evidence to be weighed by them; the doctrine being, that though the party is estopped if the matter be pleaded, yet that the Jury, upon the general issue, are not estopped, but must find their verdict upon the whole evidence in the case, and may find against the former * Judgment. Outram v. Morewood, 3 East, 346; Vooght v. Winck, 2 Barn. & Ald. 652, and the cases there cited. Thus, it would seem, that if the party had made the most of the former Judgment, either by pleading it, or using it as evidence, it could not have availed him. Much less can it have that effect in a demurrer to a Declaration, where it is stated merely as inducement, and where we can neither estimate its force as an estoppel, nor its weight as evidence.
We are next to consider the second plea of the Defendant. This is a plea to the special counts; that the Plaintiff ought not to have his action, because he says, that the single bills, in the said counts mentioned, had, subsequently to their execution, and before the promises in the said counts mentioned, been forged, erased, and materially altered, by the said Wessen, without the knowledge or consent of the said Defendant, &c. and were then and there, (unknown to the said Defendant,) void in Law, and this he is ready to verify, &c. To this plea there is a demurrer. We must, therefore, in considering this point, take the facts of the plea as true. What are they? 1st. That the bonds, after execution, and before the promise, were, without the knowledge or consent of the Defendant, materially altered by Wessen; and 2ndly, that they were (unknown to the Defendant) void in Law. I had thought from the argument, that this plea averred, that the Defendant was ignorant of the alteration of the bonds, when he promised the Plaintiff to pay them. But there is. no such allegation. On the contrary, the Defendant seems cautiously to have avoided; putting that fact in issue. He may have been fully apprised of the alteration in the bonds, when he promised to pay them to the Plaintiff, and yet every allegation in his plea be true. For instance; he alleges that the alteration in the bonds was made without his knowledge or consent. This may be entirely true, and still, before he made the promise, he may have been fully informed of the change. Again; he alleges that he was ignorant that *the alteration rendered the bonds void in Law. Now, this ignorance of the legal effect of the change, is not only consistent with, but seems to suppose, a knowledge of the fact. May we not, then, from the plea itself, fairly and rationally take this as the state of the facts; that the Defendant executed the bonds to Wessen: that he made such an alteration in them as would support the plea of non est factum, (which we know, a change of date, or even the most trivial change made by the obligee, will do:) that afterwards, when Chambliss was about to trade for the bonds, an examination of them took place, in which Cieaton probably discovered the alteration, but conscious, that he owed the money, and ignorant that he could get clear of it, promised Cham-bliss to pay the bonds? Taking this as-the true state of facts, there could not be the hesitation of a moment, (I should think,) in supporting the demurrer; for, the Defendant’s ignorance of Law could never be supposed to invalidate his promise.' Even if we suppose that the plea meant to aver an ignorance of the alteration at the time of the promise, I do not think that that alone would render the promise invalid. The plea (we must remember) acknowleges the execution of the bonds, without alleging-that the sums originally stated in them were less, than they now bear on their face. The plea also admits a promise to pay the bonds to Chambliss; and whether this promise was made after an examination of the bonds or not, common sense, and the uniform course of such transactions, assure us, that the amount of the bonds must have been mentioned. It could hardly have happened otherwise. Cham-bliss would naturally sáy to Cieaton, “Here are your two bonds to Wessen, for 8440 each-They are offered to me in trade; are they good?” If the amount was truly stated, and he had no objection to make, he would answer, “The bonds are good, and if you get them, I will pay them.” When, upon the faith of this promise, Chambliss has given the full value for these bonds, is the promise to be gotten over and rendered null, simply by the *fact, that at the time of making it, some change in the bonds had been made by *625 the obligee, which would support the plea of non est factum? After inducing the Plaintiff to expend his money, ought not the Defendant to show something more than this, before he can escape from his promise? Ought not his plea to allege, in addition, that he does not owe the money in conscience? If he does not do this, must we not conclude, that though from the strictness and severity of the Daw, pointed against forgers and spoliators, he has been able to defeat the action on the bond, yet that in justice and conscience, he owes the money? And if so, ought he not to be held to the promise, by which he had induced an innocent man to take his paper; paper, for which he had himself received value7 This is clearly my opinion; and therefore, 1 think on every ground, that the demurrer was rightly sustained.
Let me not be misunderstood. In supporting the recovery of the Plaintiff, I mean to decide, that where a man, by his promise of payment, has induced another to take his paper, he shall not release himself from the obligation of that promise, by a legal objection taken to the bond, while it is apparent that in conscience he owes the money. To show what I do not mean to decide, I will state another case. A. gives his bond to B. for $100, in payment of a horse. The day after the purchase, C. comes to A. and says, “Your bond to B. for £100 is offered to me. Is it good?” A. says, “Yes, I know of no objection to it, and will pay it when due.” Upon this, C. gets the bond. Soon after comes E. who claims the horse, and proves that he is his property, and was stolen from him. Here, the consideration of the bond wholly fails; and which of these two innocent persons shall lose it, I do not mean to decide. It will be time enough to do that, when the case comes before us.
I have taken up so much time already, that I shall say nothing further, except, that I think the Court were right, both in their decision on the plea of nul tiel record, and *in the instructions they gave to the Jury. I am for affirming the Judgment.
JUDGE COALTER concurred on every point; and JUDGE CABELL concurred on the general ground presented by the seventh and ninth counts; but dissented as to the sixth and eighth counts, which he thought not good on demurrer.*